Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:19-cv-03379

| | |
|---|---|
| Eva Rivas, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| The Hershey Company | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Hershey Company ("defendant") manufactures, distributes, markets, labels and sells crisp wafers in a white confection coating to consumers from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website (the "Products").

2.      The Products are uniformly marketed as "white" alternatives to the traditional, milk chocolate and dark chocolate Kit-Kats.

| Dark | "White" | Milk |
|------|---------|------|

  

3.      In the context of dark and milk chocolate products, the reasonable consumer expects

1

the white variety to contain white chocolate and contain ingredients derived from cacao fat.

4.      The Products are misleading because despite being portrayed and represented as "white chocolate," a complement to the dark and milk chocolate product varieties, they do not contain white chocolate, because the ingredient list reveals the absence of cocoa butter (cacao fat).



Sugar; Vegetable Oil [Palm Oil; Shea Oil; Sunflower Oil; Palm Kernel Oil; and/or Safflower Oil]; Wheat Flour; Corn Syrup Solids; Lactose (Milk); Contains 2% or Less of: Chocolate; Lecithin (Soy); Salt; Yeast; Vanillin, Artificial Flavor; Baking Soda; PGPR.



5.      Defendant has taken affirmative steps for consumers to believe the Products contain white chocolate and has intentionally failed to correct the misimpressions.

6.      The Products are intended to be viewed and understood as white chocolate, on the labels, point-of-sale marketing, retailers' display ads and promotion, television and radio ads and websites of third-parties (below).



Target.com

DollarGeneral.com

Amazon.com

Jet.com



7.     Defendant provides the product descriptions to third-party websites or has direct control over the entities which supply such information and has the ability to remove all white chocolate references in describing the Products.

8.     If third-party websites were misappropriating defendant's intellectual property to the detriment of defendant, it is unlikely defendant would allow it to continue.

9.     Defendant has promoted the Products as white chocolate by including it in its marketing campaigns side-by-side with the milk chocolate and dark chocolate varieties on their website and images supplied to third parties.



10.    It has been reported that consumers spend less than 30 seconds deciding on which products to buy at a store when faced with a binary choice, so it is not surprising they use cognitive shortcuts in reaching a decision. This includes factors beyond the text on the label, such as the comparison products, colors,

11.    Defendant has arranged for the Products to be placed (1) side-by-side with its "opposite," dark chocolate variety and (2) on the shelves which contain chocolate products as opposed to with other confections not containing cacao fat, in retail stores.



12.    Average, reasonable consumers and the public at large *believe* the Products contain white chocolate, due to the actions and omissions of defendant.

13.    While the person identified in the "tweet" below appears to dislike the Products, he also mistakenly refers to it as the "white chocolate Kit Kat."



14.    Notably, not one of the 26 replies to the original tweet points out that the Products are not white chocolate due to the absence of cacao fat.

15.    Beyond reasonable consumers, journalists are similarly misled as to the Products' white chocolate bona fides.

16.    In a story less than three months ago announcing a new Mint + Dark Chocolate Kit Kat, it was stated that "Kit Kat's other U.S. flavors are milk chocolate, dark chocolate, white chocolate and strawberry."[1]

17.    Even a website that specializes in food was mistaken as to the Products, noting[2]:

Although snack fans can find all sorts of Kit Kats in Japan, the options are much more limited in America, where the bars only come in chocolate, white chocolate,

---

[1] Josh Frigerio, Coming soon to the candy aisle: Kit Kat announces first new flavor in nearly a decade, ABC 15 Arizona, Apr. 25, 2019

[2] Greg Morabito, America's Pathetic Kit Kat Scene Gets a Kick in the Pants With Mint Chocolate 'Duos,' Eater.com, Apr 25, 2019.

strawberry, and dark chocolate varieties.

18.     Due to consumer appreciation for white chocolate, there are constant attempts at imitating white chocolate by passing off white-colored confections which lack the key component of cacao fat, in sufficient quantities to impart the attributes valued by consumers – creamy rich mouthfeel, texture, softness.

19.     These deceptive tactics are unfortunately not surprising, given the increase of "food fraud" incidents across the world.[3]

20.     Whether reports of cottonseed oil substituting for extra virgin olive oil, the horsemeat scandal in the European Union where beef was substituted, or the dangers of melamine in milk products from China, no country in today's inter-connected world is completely protected.[4]

21.     While the effects of food fraud are often associated with negative impacts on public health, the Congressional Research Service concluded that food fraud comes in various forms and does not always result in public health dangers.

22.     This includes the (1) replacement of valuable ingredients – cocoa butter -  with less expensive substitutes like vegetable fats like palm oil and (2) addition of "small amounts of a non-authentic substance to mask inferior quality ingredient[s]" such as color additives.[5]

23.     Food fraud encompasses the deliberate misidentification and obfuscation of a product's components ("ingredient deception") or marketing a version of a commonly recognized food which does not contain the characterizing and valuable ingredients ("imitation foods").

24.     In the case of white chocolate, it is the minimum amount of cacao fat (20%) that

---

[3] USP press release, "Food Fraud Reports Up 60% Since 2010," January 23, 2013.
[4] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019).
[5] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

6

separates this food from mere confectionary, or candy.

25.     Consumers expect a product represented and characterized as chocolate – by implication, comparison, association, etc. – will contain cacao-derived ingredients.

26.     This is because chocolate, a staple food for over a hundred years, contains such ingredients – cocoa nibs and cocoa butter.

27.     The nibs provide the distinctive smell and taste of chocolate while cocoa butter provides the rich mouthfeel.

28.     Since the mid-1990s, cocoa butter has been used to make white chocolate – a confection that also contains dairy ingredients and sweeteners.

29.     By law, white chocolate refers to "the solid or semiplastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients…and one or more optional nutritive carbohydrate sweeteners."[6]

30.     The reason white chocolate has certain minimum requirements is to prevent consumers from being deceived by products that appear to be white chocolate, yet contain cheaper and lower quality vegetable fats, like palm and soybean oil, instead of higher quality cacao fat.

31.     As an ingredient with applications beyond confectionery products to cosmetics and pharmaceuticals, there is a strong incentive for bad actors to "pass off" inferior, cheaper and non-cacao fat ingredients and represent them as "white chocolate," resulting in immense profits.

32.     Because the Products are expected to contain cacao fat yet instead have other vegetable oils, *viz*, palm oil, the Products are misleading to reasonable consumers.

33.     The Products are not required to state "white chocolate" and not contain cacao fat, for consumers to be misled.

---

[6] 21 C.F.R. §163.124

34.     The totality of the representations – marketing campaigns, product placement, defendant's failure to correct affirmative misrepresentations of the Products where it is described as "white chocolate" by third-parties whom it has the authority and ability to correct, and the fact that many years ago, the Products *did* contain cacao fat and were *correctly* identified as "white chocolate" – indicate the Products are misrepresented.

35.     At the time the Products contained actual white chocolate, the Products color pattern of an all-white label with the distinctive Kit-Kat red in the center, was the same as it is now.

36.     However, long after the Products' cacao fat was removed, the overall color scheme remains unchanged.

37.     Because the Products many years ago contained white chocolate, and are represented as white chocolate by third-parties with defendant's implied assent, no one given the Products a second look.

38.     The result is that defendant has been able to profit at the expense of consumers long after it replaced the cacao fat with palm and sunflower oils.

39.     The imitation white chocolate in the Product does not have cocoa butter as required, and instead has other cheap confectionary ingredients to imitate the taste of white chocolate

40.     Plaintiffs did not know, nor had reason to know, that the Product did not contain real white chocolate and were actually imitations, because the most-valued component – cacao fat – was substituted for lesser quality ingredients – palm, shea and sunflower oils.

41.     Had Plaintiff and Class members known Defendant's Product did not contain real white chocolate, understood as containing a significant amount of cacao fat, they would not have bought the Product or would have paid less for it.

42.     The Products contain other representations which are misleading and deceptive.

43.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $1.99 per 1.5 oz (42g), excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

44.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

45.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

46.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

47.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

48.    A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

49.    Plaintiff is a citizen of Kings County, New York.

50.    John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

51.    John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

52.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

53.    Plaintiffs purchased the Products based upon the representations on the packaging.

54.    Defendant is a Delaware corporation with a principal place of business in Hershey, Pennsylvania.

55.    During the class period, plaintiffs purchased one or more Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

56.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

57.    Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

58.    The classes will consist of all consumers in the following states:  all, New York, Illinois, North Carolina, Ohio, Massachusetts, Vermont, California, who purchased any Products containing the actionable representations during the statutes of limitation.

59.    A class action is superior to other methods for fair and efficient adjudication.

60.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

61.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

62.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

63.    Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

64.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

65.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

66.    Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

67.    Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories</u>

68.    Plaintiffs and John and Jane Doe plaintiffs, representing 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
e.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
j.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
n.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll.  Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

69.  Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

70.  Jane Doe plaintiffs assert causes of action under the laws of the other 49 states, including the New York General Business Law §§ 349-350 and California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

71.  Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

72.  Plaintiffs desired to purchase the Products because they were represented as white

12

chocolate, through the color schemes, product placement – with chocolates rather than confections; next to the dark chocolate variety – and representations in various media and marketing as white chocolates.

73.     Jane Doe California plaintiff and Subclass were consumers who engaged in transactions and bought the Products for personal, family, or household consumption or use. Cal. Civ. Code § 1761(d)-(e).

74.     In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

75.     After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

76.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

77.     Defendant violated the consumer protection laws of the states indicated.

78.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the Products' composition.

79.     Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

80.     The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

Violations of California's False Advertising and Unfair Competition Law
(On Behalf of California Subclass)

81.    Jane Doe California Plaintiff realleges paragraphs above.

82.    Defendant falsely represented the Products as crisp wafers in a white confection coating as containing cacao fat when they had less of this characterizing ingredient, or none at all.

83.    Jane Doe California Plaintiff and Subclass suffered injury in fact, lost money or property as a result of Defendant's violations. of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

84.    Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

Violations of California's Unfair Competition Law
(On Behalf of the California Subclass)

85.    Jane Doe California Plaintiff realleges all paragraphs above.

86.    Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c) the Cal. Bus. & Prof. Code §§ 17580-17581.

87.    Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

88.    Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

89.    Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

90.    Jane Doe California Plaintiff and the other California Subclass members suffered substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

91.    There is no benefit to consumers or competition by deceptively marketing and labeling the Products.

92.    Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging which are misleading;

(b) provide restitution to Jane Doe California Plaintiff and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

### Negligent Misrepresentation

93.    Plaintiff incorporates by references all preceding paragraphs.

94.    Defendant misrepresented the Products and took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

95.    Defendant had a duty to affirmatively correct consumer misimpressions, given that its conduct contributed and was responsible for those impressions, intentionally failed to correct the Products' representations because they elevated the quality of the Products and maintained the distinctive all white packaging even when the cacao fat was removed instead of reverting to the standard Kit Kat red packaging with the words, "white cream" as descriptive terms.

96.     This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

97.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

98.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

99.     Plaintiff incorporates by references all preceding paragraphs.

100.    Defendant manufactures and sells products which misrepresent their composition and organoleptic and sensory qualities and attributes, through omission, and failure to correct misimpressions created by defendant.

101.    Defendant warranted to plaintiff and class members, directly and indirectly, that the Products contained cacao fat, when this was not truthful and misleading.

102.    Plaintiff desired to purchase products which were as described by defendant.

103.    Defendant had a duty to disclose and/or provide a non-deceptive description of the products or services and knew or should have known same were false or misleading.

104.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

105.    The Products were not merchantable in their final sale form.

106.    Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

107.    Plaintiff incorporates by references all preceding paragraphs.

108. Defendant's actions were motivated by increasing their market share amongst companies that sell crisp wafers in a white confection coating, to deceive consumers who expect where two identical products – Kit Kats – are placed next to each other and one is labeled "Dark" and the other "White," these terms are shorthand for the type of chocolate they contained.

109. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

110. Plaintiff incorporates by references all preceding paragraphs.

111. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Injunctive relief for members of the New York Subclass pursuant to New York General Business Law ("GBL") §§ 349 & 350;

4. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

17

6.  An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, NY GBL, CUPTA, CLRA and other statutory claims;

8.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9.  Such other and further relief as the Court deems just and proper.

Dated:   June 7, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03379
United States District Court
Eastern District of New York

Eva Rivas, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

The Hershey Company

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0052
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 7, 2019

/s/ Spencer Sheehan
Spencer Sheehan