United States District Court
Eastern District of New York                              1:19-cv-03379-KAM-SJB

Eva Rivas, individually and on behalf of all
others similarly situated

                           Plaintiff

                - against -

The Hershey Company

                           Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Complaint

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

Attorneys for Plaintiffs

Table of Contents

Table of Authorities ................................................................................................................. ii

Introduction ...............................................................................................................................1

ARGUMENT..............................................................................................................................1

I.   Legal Standard .....................................................................................................................1

II.  Plaintiff Plausibly Alleges the Products are an Imitation of White
     Chocolate ............................................................................................................................4

     A.   Labeling of Imitation Foods .......................................................................................4

III. Plaintiff has Alleged Injury ................................................................................................11

Conclusion ...............................................................................................................................11

**Table of Authorities**

    **Cases**

*Ackerman v. Coca-Cola Co.*,
    No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ............................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 1, 2

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002) ....................... 2

*Belfiore v. Procter & Gamble Co.*,
    No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) .......................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 2

*Chen v. Dunkin' Brands, Inc.*,
    No. 1:17-cv-3808
    (E.D.N.Y. Sept. 17, 2018) ........................................................................................................ 7

*Clark v. Perfect Bar, LLC*,
    2018 WL 7048788
    (N.D. Cal. Dec. 21, 2018) ....................................................................................................... 7

*Dyson v. Avoset Food Corp.*,
    86 Misc. 2d 769, 382 N.Y.S.2d 947
    (New York Supreme Court, Albany 1976) ............................................................................. 6

*Falcon v. City University of New York*,
    No. 15-cv-3421 (E.D.N.Y. July 15, 2016) ............................................................................ 11

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
    624 F.3d 106 (2d Cir. 2010) ................................................................................................... 1

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................................................... 3

*Fogarazzo v. Lehman Bros.*,
    341 F. Supp. 2d 274 (S.D.N.Y.2004) ..................................................................................... 8

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995) ..................................................................................................... 1

*Geffner v. Coca-Cola Company*,
    928 F.3d 198 (2d. Cir. 2019) .................................................................................................. 8

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  8 F.Supp.3d 467 (S.D.N.Y. 2014) ................................................................................8

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
  774 N.E.2d 1190, 98 N.Y.2d 314 (2002) .....................................................................3

*Hanley v. Chicago Title Ins. Co.*,
  No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ...................................1

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y.2010) ...........................................................................8

*Lonner v. Simon Prop. Grp., Inc.*,
  866 N.Y.S.2d 239 (App. Div 2008.) .............................................................................9

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) .........................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) .....................................................................................................3

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ..........................................................................9

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS
  126880 (E.D.N.Y. Sep. 22, 2015) .................................................................................8

*United States v. 651 Cases, Etc.*,
  114 F. Supp. 430 (N.D.N.Y. 1953) ...............................................................................5

*Weisman v. LeLandais*,
  532 F.2d 308 (2d Cir. 1976) .........................................................................................1

*Williams v. Calderoni*,
  2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
  *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) .....................................2

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................................7

*Woods v. Maytag Co.*,
  807 F.Supp.2d 112 (E.D.N.Y. 2011) ............................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................1

Federal Rule of Civil Procedure 12(b)(6).....................................................................................1

**Introduction**

Plaintiffs submits this memorandum of law in opposition to defendant's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Def. Notice of Motion and Memorandum of Law in Support ("Def. MOL").  For the reasons below, the motion should be denied it in its entirety.

**ARGUMENT**

**I.   Legal Standard**

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

A.   <u>Factual Allegations Should be Accepted as True</u>

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

   B. <u>Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled</u>

Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

   C. <u>New York General Business Law 349 and 350 Provide Relief Where a Defendant Engages in Deceptive Acts</u>

2

The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising." The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).

Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

D. <u>Defendant's Labeling Should be Viewed in Context</u>

Though defendant asserts the issues before the Court are unambiguous, a closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

In determining whether conduct is misleading "context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (magazine sweepstakes mailer was not deceptive where "promotions expressly and repeatedly state the conditions which must be met in order to win" and such disclaimer "appears immediately next to the representations it qualifies").

3

Courts within this state have consistently held that "issues of deceptiveness and good faith are not resolved as a matter of law" through a fine print disclaimer. *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001) (credit card agreement where the disclaimer was present "in the small print footnote to the solicitation offer" is insufficient to defeat a claim of deception).

## II. Plaintiff Plausibly Alleges the Products are an Imitation of White Chocolate

Under 21 U.S.C. § 343(c), a food is misbranded if it "is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." *See* 21 C.F.R. § 101.3(e)(1) (defining an imitation food as one that "is a substitute for and resembles another food but is nutritionally inferior to that food.").

Plaintiff has alleged the Products are a substitute for real white chocolate and resemble white chocolate. ECF No. 1, ¶¶ 18, 22. However, the Products are nutritionally inferior to the food they attempt to substitute for "because the most-valued component – cacao fat – was substituted for lesser quality ingredients – palm, shea and sunflower oils." ECF No. 1 at ¶ 40.

Cocoa butter contains less saturated fat than the vegetable oil alternatives used in the Products. Additionally, the saturated fat in cocoa butter is mainly stearic acid which does not have the negative effect of increasing cholesterol compared to other saturated fats. Cocoa butter also contains "good" fats such as monosaturated fat and palmitic fatty acid, elements that are noticeably absent from the vegetable oils – which contain harmful and prohibited trans-fats – used in its place.

### A. Labeling of Imitation Foods

A substitute food is one that resembles another food, in the case of a "dairy spread" consisting of butter and vegetable oils vis-à-vis butter. To prevent the gradual deterioration of the

4

American diet, Congress required that where a substitute food is nutritionally inferior to its counterpart, it is required to be identified with the word "imitation" immediately following the name of the food. 21 C.F.R. § 101.3(e).

Even though the Products have a "common or usual name" of "Crisp Wafers n' Crème," it is nonetheless an imitation because it is "nutritionally inferior to the food for which it substitutes and which it resembles." 21 C.F.R. § 101.3(e)(2)(i); 21 C.F.R. § 101.3(e)(2)(ii).

Taking defendant at its word that it does not purport to pass its "wafers n' crème" off as white chocolate, this is insufficient to "act as a warning or as a snare for the unwary purchaser." *United States v. 651 Cases, Etc.*, 114 F. Supp. 430, 433 (N.D.N.Y. 1953) (product named "Chil-Zert" accompanied by the statement "not an ice cream" but without the required term "imitation" insufficient to escape compliance with statutory requirements enacted to prevent consumer deception).

Similar to the imitation ice cream in Chil-Zert, the Products here substitute a cheaper ingredient – palm oil for cacao fat. *651 Cases, Etc.*, 114 F. Supp. at 432-33 (noting the composition of "Chil-Zert" "differs only from ice cream in the substitution of a cheaper ingredient; namely, vegetable oil in place of milk products. It is, therefore, something less than the genuine article chocolate ice cream. It is inescapable that the ordinary understanding of English speech would denominate it as an imitation of ice cream.").

Merely because the Products have a common or usual name and "white chocolate" is not specified in the small print on the ingredient list, consumers can be and in fact, are, deceived. Reasonable, even highly sophisticated consumers, may not be aware of the nutritionally harmful properties of hydrogenated vegetable oils when compared to the non-hydrogenated cacao fat. For this reason, among others, the absence of the term "imitation" following "Crisp Wafers n' Crème"

5

is misleading to consumers. *Dyson v. Avoset Food Corp.*, 86 Misc. 2d 769, 770, 382 N.Y.S.2d 947 (New York Supreme Court, Albany 1976) ("If a food product "imitates" another, that is, if one food copies, or is made to resemble another in appearance, taste, color, texture and in other qualities compositely considered and is cheaper but of lesser quality than the original because of the use of less expensive and inferior ingredients and at the same time is calculated to deceive the buyer by making him believe he has purchased a product as good as the original for a cheaper price, then such imitative food should be required to bear the word "imitation".").

Though defendant now states that a "consumer faced with a label calling a product "Crème" and an ingredients list indicating the product contains less than 2% chocolate, cannot reasonably believe that the product is coated in white chocolate." Def. Mem. At 1. However, it was precisely this type of deception which prompted defendant to seek establishment of a standard of identity for "white chocolate" in 1989. Exhibit "A," Letter from The Hershey Corporation to FDA, August 8, 1989, Docket No. 86P-0297/CP (Proposal to Amend Standards of Identity for Cacao Products).

Then, defendant correctly noted that:

> the use of fanciful names obscures the true nature of the product. Consumers who might expect to be purchasing a "chocolate" or "white chocolate" product may, in fact, be purchasing a coating-type product manufactured with cheaper ingredients made from other oils and/or fats and which contain little or no cacao ingredients.

Exhibit "A" at p. 2.

Approximately thirty (30) years later, defendant has resorted to the same tactics it previously decried.

Defendant's sole disclaimer is the fine print of the ingredient list. Def. Mem. At 8 citing *Workman v. Plum Inc.*, 141 F.Supp.3d 1032, 1035 (N.D. Cal. 2015) ("any potential ambiguity

6

could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.").

Defendant's authorities in support of its position are inapposite. *Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018); *Chen v. Dunkin' Brands, Inc.*, No. 1:17-cv-3808, Dkt. No. 23 (E.D.N.Y. Sept. 17, 2018). In *Clark*, the key factor was that defendant, "at all material times in question, remained in compliance with all sugar-disclosure regulations," despite that plaintiff's allegation of failing to disclose its sugar content. Here, the Products are not in compliance with the relevant regulations because their front label lacks a common or usual name, which is required to "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

In *Chen*, the Court found that the term "Angus Steak" to describe breakfast sandwiches was not misleading because it does not cause a consumer "to believe that the meat patty contains only Angus beef," but that they contain "just some "Angus beef." In contrast, defendant's representations and omissions cause consumers to expect a product containing at least *some* white chocolate, which they do not receive.

*Workman* is against the weight of authority in this district, given the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("we cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible.") citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.") *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law

7

extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing.").

Defendant's reliance on the Second Circuit's recent decision upholding dismissal of a plaintiff's case based on the term "diet" and a misplaced expectation it would cause weight loss, is misplaced. *Geffner v. Coca-Cola Company*, 928 F.3d 198, 200 (2d. Cir. 2019).

Defendant claims that like in *Geffner*, its "Kit Kat® White carries a 'clear meaning' that is contrary to Plaintiff's claim that the Product is portrayed and represented as white chocolate." Defendant avers that "the packaging does not include any statement describing the Product as 'white chocolate.'" However, this ignores that a "statement can be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact," which is the *de minimis* amount of cacao fat in the Products as opposed to the lower quality vegetable oils. *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 578 (S.D.N.Y.2010); *Fogarazzo v. Lehman Bros.*, 341 F. Supp. 2d 274, 294 (S.D.N.Y.2004) ("A statement can also be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact.").

At best, authorities within this Circuit hold that "the presence of a disclaimer or other clarifying language *may* defeat a claim of deception." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 479-80 (S.D.N.Y. 2014) (emphasis in original); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at *18 (E.D.N.Y. Sept. 24, 2014) (considering font size, placement, emphasis and consistency when evaluating whether a disclaimer is sufficient to prevent a reasonable consumer from being misled); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement.");

8

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled."); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis.") *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.")

While defendant seeks dismissal based on the absence of "white chocolate" on the ingredient list, this is also in contrast to its position at the time it was seeking to establish this food's standard of identity. According to defendant's petition,

> Consumers of "white chocolate" products should not have to resort to looking at technical ingredient statements to determine if such products contain real cacao ingredients or whether they are manufactured using cheaper ingredients from other sources. Products which are commonly referred to as "white chocolate" should be required to contain a minimum level of cacao ingredients. Adoption of the proposed standard will eliminate the need for fanciful name designations which reveal little about the true nature of the product. In addition, the current level of consumer confusion and misunderstanding will be diminished.

Exhibit "A," p. 3.

To be clear, all foods that resemble or substitute for other foods are not "imitations." Such a reading of the requirements would result in disarray and illogical outcomes. Even if it is accepted

9

that the name of the products – "Crisp Wafers 'n Crème" is "an appropriately descriptive term that is not false or misleading" or a "fanciful name," the Products remain "nutritionally inferior to the food for which it substitutes and which it resembles." 21 C.F.R. § 101.3(e)(2)(i)-(ii).

Defendant does not need to explicitly identify the Products as "white chocolate" for consumers to receive that impression. Defendant knows consumers will be misled by the failure to clearly identify the Products as an "imitation."

When defendant sought to establish a standard of identity for white chocolate, it conducted a marketing survey "to determine the most common name used by adult candy consumers when shown a variety of confection products, including a generic white confection bar." Exhibit "B," "White Chocolate" Consumer Survey.

More than 60% of respondents used the term "white chocolate" to describe a white confection bar. Another 10% associated the white confection bar with "chocolate." Exhibit "B," ("Based on these results, it appears that the majority of candy consumers tend to identify white confection as either 'white chocolate' specifically or as some variety of chocolate.").

When the results of defendant's survey are coupled with the association of the Kit-Kat brand with chocolate, the Product's placement amongst chocolate instead of general confections and the adjacent "milk" and "dark" chocolate varieties, it is no wonder that plaintiff and reasonable consumers are deceived.

In its argument, defendant claims the term "crème" is an accurate identifier for the Products, yet the absence of the term cream (distinct from lactose or milk) from the ingredient list defendant relies upon, actually supports plaintiff's position. A non-deceptive name would reference or include the vegetable fat components of the Products as opposed to "wafers n' crème"

10

which is also sufficient to describe the milk and dark chocolate varieties of the product, because they consist of wafers and the same "cream" ingredients in the white version.

### III. Plaintiff has Alleged Injury

Defendant claims that Plaintiff has failed to allege that she suffered any injury. Defendant is wrong. New York law states that plaintiffs can establish injury by alleging that they paid a premium for a product, and the complaint unquestionably alleges this. Specifically, the Complaint contains allegations that Defendant charged, and the New York Plaintiff paid, a premium for the Products. This is sufficient for a damages claim under New York's consumer protection law. *Orlander v. Staples, Inc.*, 802 F.3d at 302 (citing *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288–89 (S.D.N.Y.2014)) (but for Defendant's "unfair and deceptive practices," they – and the putative class – would not have purchased, or paid a price premium for, Smart Balance. . Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason.").

### Conclusion

Courts have "refused to consider arguments that could have been made in an original motion to dismiss that were re-asserted in a motion to dismiss an amended complaint or in opposition to the filing of an amended complaint." *Falcon v. City University of New York*, No. 15-cv-3421 (E.D.N.Y. July 15, 2016).

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:   January 10, 2020

                                                               Respectfully submitted,

                                                               Sheehan & Associates, P.C.
                                                               /s/Spencer Sheehan
                                                               Spencer Sheehan (SS-8533)

505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03379-KAM-SJB
United States District Court
Eastern District of New York

Eva Rivas, individually and on behalf of all others similarly situated,

                Plaintiff,

    -against-

The Hershey Company

                Defendant

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

January 10, 2020                                                                 /s/ Spencer Sheehan
                                                                                        Spencer Sheehan