```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
EVA RIVAS,

            Plaintiff,                      MEMORANDUM AND ORDER

      v.                                    19-CV-3379(KAM)(SJB)

THE HERSHEY COMPANY,

            Defendant.
-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Eva Rivas ("Plaintiff") all1eges that the "Kit Kat White" candy bar materially misleads consumers because it does not contain white chocolate. The defendant in this action, the Hershey Company ("Hershey" or "Defendant"), moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons herein, the complaint is DISMISSED with prejudice because the court lacks subject matter jurisdiction over the action, and Defendant's motion to dismiss is therefore rendered moot.

## Background

On June 7, 2019, Plaintiff, individually and on behalf of all others similarly situated, filed a complaint against Hershey. (ECF. No. 1, Complaint ("Compl.").) Initially, Plaintiff raised seven causes of action: (1) violation of New

1

York's General Business Law ("GBL") §§ 349 and 350, and the consumer protection laws of the other 49 states; (2) violation of California's False Advertising Law, Business and Professions Code § 17500; (3) violation of California's Unfair Competition Law, Business and Professions Code § 17200; (4) negligent misrepresentation; (5) breach of express warranty and of the implied warranty of merchantability; (6) fraud; and (7) unjust enrichment.  (*See generally id.*)  At a pre-motion conference before the court in November 2019, Plaintiff agreed to dismiss the Jane Doe plaintiffs and six of the causes of action, and proceed only with "Plaintiff's individual claims against Defendant . . . ."  (ECF Minute Entry and Dkt. Order Nov. 13, 2019.)  The claims remaining in the case, therefore, are Plaintiff's individual claims under New York GBL §§ 349 and 350.

Defendant Hershey manufactures, distributes, and markets Kit Kat candy bars, which are crisp wafers coated in a variety of flavors, including, most commonly, milk chocolate. One variety, the Kit Kat White, is coated "in a white confection coating."  (Compl. ¶ 1.)  Plaintiff alleges that Kit Kat White is misleading to consumers because it does not contain white chocolate.  (*See id.* at ¶¶ 2-4.)  Plaintiff alleges that the Kit Kat White is marketed as an "alternative[]" to the dark and milk chocolate versions of the Kit Kat, and in that context, "the

2

reasonable consumer expects the white variety to contain white chocolate," which is "derived from cacao fat."  (*Id.* at ¶¶ 2-3.)

Kit Kat White's packaging describes the product as "[c]risp [w]afers [i]n [c]rème."  (*Id.* at ¶¶ 2, 6.)  A depiction of the front of the packaging is shown below:



(*Id.*)

Plaintiff alleges that Kit Kat White is "intended to be viewed and understood as white chocolate" not only based on its packaging, but based on point-of sale marketing, retail displays, advertisements, and on the websites of third parties.  (*Id.* at ¶ 6.)  Plaintiff cites, as examples, the websites of retailers such as Target, Dollar General, and Amazon, which use "white chocolate" in the description of Kit Kat White bars.  (*Id.*)  In addition, Plaintiff alleges that Defendant's own marketing and advertising suggest that Kit Kat White contains white chocolate, because it is advertised along with, or displayed next to, the milk chocolate and dark chocolate versions.  (*Id.* at ¶¶ 10-11.)

3

Plaintiff also contends that Kit Kat White used to contain white chocolate, but it no longer does. (*Id.* ¶¶ 36-37.) Because Defendant did not update the overall scheme of Kit Kat White's packaging, Plaintiff avers that consumers are being misled into thinking that Kit Kat White still contains white chocolate. (*Id.*)

Lastly, Plaintiff asserts that "as a result of the false and misleading labeling, the [Kit Kat White bars] are sold at premium prices . . . compared to other similar products." (*Id.* at ¶ 42.) Plaintiff alleges that if she had known that Kit Kat White bars did not contain real white chocolate, she would not have purchased the product, or she would have paid less for it. (*Id.* at ¶ 41.)

In January 2020, Hershey's filed the instant motion to dismiss the complaint. (ECF No. 12, Motion to Dismiss; *see* ECF No. 13, Memorandum in Support ("Mem.").) Plaintiff opposed the motion (ECF No. 14, Memorandum in Opposition ("Opp.")), and Hershey filed a reply brief (ECF No. 15, Reply in Support). With her opposition, Plaintiff filed two documents not referenced in her complaint.[1] The first was a letter from

---

[1] In general, on a motion to dismiss, a court should only "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" that the plaintiff relied upon in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Nonetheless, the court describes these documents briefly, though it does not find them relevant to this Memorandum and Order.

4

Hershey to the Food and Drug Administration ("FDA"), dated August 9, 1989, in which Hershey asked the FDA to establish a standard to identify white chocolate.  (Opp., Ex. A.)  Hershey noted in the letter that:

> In many cases, the use of fanciful names obscures the true nature of the product. Consumers who might expect to be purchasing a "chocolate" or "white chocolate" product may, in fact, be purchasing a coating-type product manufactured with cheaper ingredients made from other oils and/or fats and which contain little or no cacao ingredients.

(*Id.* at 2.)  In addition, Plaintiff filed with her opposition the results from a marketing survey conducted by Hershey "to determine the most common name used by adult candy consumers when shown a variety of confection products, including a generic white confection bar." (Opp., Ex. B., at 1.)  The results showed that "the majority of candy consumers tend[ed] to identify white confection as either 'white chocolate' specifically or as some variety of chocolate."  (*Id.*)

Defendant subsequently filed notices of additional authority, drawing the court's attention to two recent decisions from the United States District Court for the Northern District of California: *Cheslow v. Ghiradelli Chocolate Company*, No. 19-cv-7467, 2020 WL 1701840 (N.D. Calif. April 8, 2020) (granting motion to dismiss complaint regarding Ghiradelli Premium Baking Chips Classic White Chips); and *Prescott v. Nestle USA, Inc.*,

5

No. 19-cv-7471, 2020 WL 3035798 (N.D. Cal. June 4, 2020) (granting motion to dismiss complaint regarding Nestle Toll House's Premier White Morsels). (*See* ECF Nos. 17, 18, 19, 20.)

## Legal Standards

### I. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The "court must accept as true all of the allegations contained in a complaint," but the court need not accept a plaintiff's "legal conclusions." *Id*. Where the factual allegations, even accepted as true, do not plausibly suggest unlawful conduct, the plaintiff's complaint must be dismissed. *Id.* at 679-80.

### II. New York GBL §§ 349 and 350

A plaintiff is entitled to relief for a violation of GBL § 349, which prohibits deceptive business practices, if: (1) the act, practice, or advertisement was consumer-oriented; (2)

the act, practice or advertisement was misleading in a material respect, and (3) the plaintiff was thereby injured. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). Similarly, to establish a claim under GBL § 350, which prohibits false advertising, "a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002)) (alteration omitted).

"The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010); *see Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading to 'a reasonable consumer acting reasonably under the circumstances.'") (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

Moreover, "[c]laims under GBL §§ 349 and 350 are not subject to the pleading-with-particularity requirements of

7

[Federal Rule of Civil Procedure] 9(b)." *Ackerman*, 2010 WL 2925955, at *22.

## Discussion

Plaintiff alleges that Defendant violated GBL §§ 349 and 350 by misleading consumers into believing that the Kit Kat White contains white chocolate, and thus consumers purchased it at a premium. Defendant argues that Plaintiff's New York GBL claims should be dismissed because Plaintiff (1) failed to adequately plead that Defendant's actions were objectively materially misleading, (2) failed to adequately plead causation, and (3) for purposes of GBL § 350, failed to adequately plead that she relied on the statements that she challenges. Because the court dismisses this case for lack of subject matter jurisdiction, it need not address the merits of Defendant's arguments. Nonetheless, for purposes of determining whether Plaintiff should be granted leave to amend her complaint, the court will briefly address whether she can plausibly allege that Defendant engaged in materially misleading practices or advertising.

**I. Subject Matter Jurisdiction**

The only claims remaining in this case are the claims under the New York GBL. At the conference during which Plaintiff agreed to dismiss her other claims and the other plaintiffs, the court raised the issue of its subject matter

jurisdiction over the remaining state law claims, and expected that the "parties [would] address th[e] matter in their briefing."  (ECF Minute Entry and Dkt. Order Nov. 13, 2019.) The parties, however, did not address subject matter jurisdiction in their briefing.  Defendant, in a footnote, "reserve[d] the right to raise such a defense in the future should the facts indicate it is appropriate."  (Mem. at 5 n.1.) "Although the parties did not brief the issue . . ., the [c]ourt may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding."  *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999); *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte*.").

Because Plaintiff has brought only state law claims against Defendant, this court's jurisdiction must be based on diversity of citizenship under 28 U.S.C. § 1332, which requires that the parties be "citizens of different States," and that "the matter in controversy exceed[] the sum or value of $75,000."  28 U.S.C. § 1332(a)(1).  There appears to be diversity of citizenship here, because Plaintiff is a citizen of New York, and Defendant is incorporated in Delaware and its principal place of business is in Pennsylvania.  (Compl. ¶¶ 49, 54.)  The

9

amount in controversy, however, does not appear to approach anywhere near $75,000.

In her complaint, which was filed as a proposed class action on behalf of all individuals similarly situated, Plaintiff alleged $5 million in damages. (*Id.* at ¶ 45.) Now that Plaintiff has agreed to proceed only with her individual claims against Defendant, she would have to plead that she suffered damages of at least $75,000 in order for this court to have jurisdiction over her claims. New York GBL § 349 allows a plaintiff to recover her actual damages, and very modest statutory damages of up to $1,000.[2] Plaintiff alleges that Kit Kat White bars sold at a premium of $1.99 per 1.5 ounce candy bar. (*Id.* at ¶ 43.) Thus, accepting as true Plaintiff's allegation that she overpaid by $1.99 each time she purchased a Kit Kat White, she would need to have purchased 37,689 Kit Kat White bars in order to accumulate $75,000 in damages. Even if the court were to assume that Plaintiff's damages were the full price of each Kit Kat White, and she were to succeed in recovering statutory damages, she still would need to have

---

[2] Under GBL § 349, "[c]itizens can . . . recover actual damages (or $50, whichever is greater) and obtain attorney's fees." *Stutman*, 95 N.Y.2d at 28. "In addition, if a defendant knowingly or willfully engages in a deceptive practice, the court may, in its discretion, award treble damages up to a maximum of $1,000." *Id.* at 28-29. GBL § 350 does not specify recoverable damages, but the potential recovery is presumed to be the same as it is under GBL § 349. *See Austin v. Albany Law Sch. of Union Univ.*, 957 N.Y.S.2d 833, 843 (Sup. Ct. 2013).

10

purchased many thousands of candy bars to reach damages of $75,000. It is not plausible that a single individual, unless she ate nothing but Kit Kat White bars over the course of many years, would purchase that many. *See Maitland v. Lunn*, No. 14-cv-5938, 2017 WL 1088122, at *5 (E.D.N.Y. Mar. 21, 2017) (plaintiff must "allege to a 'reasonable probability' that they suffered damages in excess of $75,000").

Accordingly, because the amount in controversy here is well below $75,000, this action must be dismissed for lack of subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed.").

**II.   Materially Misleading Practices/Advertising**

Plaintiff could theoretically argue that she should be allowed to amend her complaint in order to plausibly invoke this court's jurisdiction, and so the court will briefly consider whether such an amendment would be futile. *See Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile."). Because Plaintiff will not be able to

11

allege that Defendant engaged in misleading business practices or misleading advertising, any amendment would be futile.

In determining whether a practice or advertisement is materially misleading, the inquiry is whether, objectively, the act or advertisement is likely to mislead "a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. A court may decide this question as a matter of law, *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), although generally the inquiry is a question of fact, *see Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016). The Second Circuit has explained that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Geffner v. Coca-Cola Co.*, 928 f.3d 198, 200 (2d Cir. 2019).

The gravamen of Plaintiff's complaint is that the Kit Kat White is "intended to be viewed and understood as white chocolate, on the labels, point-of-sale marketing, retailers' display ads and promotion, television and radio ads and websites of third-parties." (Compl. ¶ 6.) Crucially, there is no statement anywhere on Kit Kat White's packaging, or in any Hershey advertisement cited by Plaintiff, that describes the product as containing white chocolate. It is simply described as being "[w]hite," and "[c]risp wafers [i]n [c]rème."

12

The Second Circuit's recent decision in *Geffner v. Coca-Cola* is instructive for how a court should approach a modifying adjective, such as "white," on a product's packaging. In *Geffner*, the plaintiff alleged that the modifier "diet" on a soda can was misleading to consumers, as a promise that the product would help with weight loss. 928 F.3d at 200. The Second Circuit looked to the dictionary, which defined "diet" as, "reduced in or free from calories." *Id.* Based on the "clear meaning" of the term "diet," the label was not misleading because the product was indeed "free from calories," and the plaintiff's allegations were therefore "implausible on their face." *Id.*

Returning to the present case, the dictionary defines "white" as, *inter alia*, "of the color of new snow or milk."[3] There is no dispute that the Kit Kat White is, as the modifying adjective suggests, white in color. *See Cheslow*, 2020 WL 1701840, at *5 ("The adjective 'white' in 'White Chips' does not define the food itself but rather defines the color of the food."). Plaintiff's claim, therefore, cannot be that Hershey's packaging of Kit Kat White contains false information. Instead, Plaintiff's claim is that, because the Kit Kat White is advertised and displayed next to dark and milk chocolate Kit

---

[3] "White," MARRIAM-WEBSTER, *available at* https://www.merriam-webster.com/dictionary/white.

13

Kats, consumers will infer that the Kit Kat White is also chocolate, and, due to the modifier, that it is white chocolate. (*See* Compl. ¶ 2.)

Plaintiff's complaint alleges no plausible facts that the presence of the word "white" on the package of Kit Kat White bars gives rise to a plausible claim that consumers would be misled into believing that chocolate was an ingredient. *See Prescott*, 2020 WL 3035798, at *4 ("No reasonable consumer could believe that a package of baking chips contains white chocolate simply because the product includes the word 'white' in its name or label."). Even if Plaintiff's allegation may have been plausible if the packaging *only* included the words "Kit Kat White," the product is also clearly described as "[c]risp wafers [i]n [c]rème." "Crème" is defined as, *inter alia*, "cream or a preparation made with or resembling cream used in cooking."[4] A reasonable consumer would not be misled into believing that the wafers are dipped in white chocolate when the packaging does not mention chocolate, and states that the wafers are dipped in crème, which is not the same as white chocolate.

Accordingly, Plaintiff cannot plausibly state a claim that the marketing of Kit Kat White is misleading to a reasonable consumer, and therefore, any amendment to her

---

[4] "Crème," MARRIAM-WEBSTER, *available at* https://www.merriam-webster.com/dictionary/creme.

14

complaint in an effort to invoke the court's subject matter jurisdiction would be futile.

## Conclusion

For the foregoing reasons, Plaintiff's complaint is DISMISSED in its entirety, with prejudice. Defendant's motion to dismiss is moot. The Clerk of Court is respectfully directed to enter judgment for Defendant and close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
July 27, 2020

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge